Call in Case 16-5051, Maverick Group Marketing Inc v. Worx Environmental Products et al. Oral argument not to exceed 15 minutes per side. Malcolm Futhy for the appellant. May it please the Court. Your Honors, my name is Malcolm Futhy. I'm here for the appellant, Maverick Group Marketing Inc. At this time I'd like to request three minutes for rebuttal. You may. Thank you, Your Honor. Your Honors, this lawsuit concerns Maverick's claim for commissions owed in soliciting Walmart for over two years and persisting through five buyers to sell Worx's hand cleaner. We have three issues on appeal. Before we jump into the issues, I would like to clarify the standard of review. I hinted at it, but I don't think I fully stated the standard of review for the second issue for the question of whether the order solicited provision of paragraph 6 should be upheld post bench trial ruling. The proper standard of review is that factual findings should be reviewed for clear and convincing evidence and legal questions should be reviewed de novo. In support of that standard, there is the case Foster v. Nationwide Mutual Insurance Company. Citation for that is 710 F3 640 6th Circuit, 2013. Jumping into the first issue, the first question is whether at the summary judgment phase the district court properly ruled that the failure to comply provision, the sub-signature provision, was not a part of the contract. Your Honor, this contract, which was drafted by a defendant, had beneath it this Manicode of Ethics section. Now, it is different from the actual Manicode of Ethics, and to clarify for this oral argument, I'm going to refer to the Code of Ethics within the agreement as the Agreement Code and then the Manicode of Ethics as the Manicode. The first point that the district court made in the summary judgment ruling was that sub-signature provisions aren't applicable. At the time, I found no Tennessee state case law on point. Later on, I realized the reason for that is because there are no Tennessee case laws directly on point. There is the one case, Bill Bank, which is the Tennessee Court of Appeals, applying Georgia law, finding that a sub-signature provision applies, but applies Georgia law. I've also cited in my brief a number of cases... So the blocked things at the bottom? Yes, sir. Isn't the language of them really strange? I mean, it's very hortatory. Isn't it strange to think of them as part of the contract? Well, it's unique. It's definitely unique, but what is different about the language is that it does say to be accorded within the agreement. The agreement itself has the Agreement Code. It has that language, accorded, and the term accorded means to give or to grant. And that language is not in the Manicode of Ethics. It is unique to have it there. Well, and wouldn't it be, you know, you've used the term sub-signature provisions with no reference at all in the supra-signature provisions, either saying, you know, look at this, or we'll think about it, or some such, because as Judge Sutton used the word hortatory, you know, there are things in it such as the agent has various representations. Loyal service, the same as the agent would expect from its own employees. I think you'd be very reluctant to have somebody try to enforce that against the agent, wouldn't you? Well, Your Honor, there is... Well, yes, you're a good worker, but you weren't as loyal as my workers. It is all they worded. The whole contract is all they worded. If you look at the beginning, how paragraphs four and six intertwine, it's not clear. There is a duty of loyalty in Tennessee. There is a state provision. A lot of these provisions... But as much loyalty as your own employees. Yeah, that makes sense. I have very loyal employees, and maybe you're not quite that loyal. Yeah. Well, Your Honor, there's a question, you know, not all provisions, you have to take it provision by provision. Not all provisions have sufficient specificity or clarity. And this contract, in those circumstances, has a severability provision. If you look at paragraph nine, if you have something that doesn't make sense, well, then you cut it out. But the rest of the contract stays. You have to look at the individual provisions to see whether there is sufficient specificity. And here, I think there's more than sufficient specificity with regard to the failure to retain provision. But we do have, and what is also unique, what is one point about the substantive provision is that it's not in small print. It takes up two-thirds of the page, Your Honor. So it's hard to say that you would miss this provision. This is a clear, bold, and yelling out provision that sticks out. So it's not as though you would think that it wouldn't be part of the contract. If it wasn't part of the contract, if it were only aspirational, it shouldn't have been in the contract. You know, it should have been a separate document. Why in the world would you take aspirational provisions and put it into the contract unless you intended it to be a part of the contract? You're saying it's not a part of the contract. I'm saying it is a part of the contract because they put it in there. If you didn't want it to be a part of the contract, you should have left it out. And the signatories to this contract testified that they thought it was part of the contract. Brent Keeley, who signed it for works, said he thought it was part of the contract and my client thought it was part of the contract. So if you look at the intent of the parties, which is the primary purpose in construing a contract, then you would have to say that they did intend and that this is a part of the contract. Do you lose if it's not part of the contract? No, Your Honor. If it's not part of the contract, we have a second position, which is that the term order solicited should be given its natural and ordinary definition. There are two avenues for us to prevail. Either you apply the failure to comply provision in the agreements code or you can apply the order solicited in paragraph six of the agreement. Is the key here not solicited but orders? In other words, until something is done that makes it an order, you've solicited business, you've solicited attention, you've solicited obviously from the beginning when you're pitching, but have you solicited an order when it isn't binding in any way even on the buyer? In other words, we know that acceptance is a separate step. It doesn't have to be accepted. But in order to be an order solicited, when does it become an order? Right. Well, there are two parts to that. The district court ruling focused on soliciting. If you look at the summary judgment order, it focuses strictly on the term soliciting. It defines soliciting. It says that soliciting is to petition or to approach and said if it applied the natural language of solicit, it would have to rule in favor of Maverick. That's in the record at 2,889. But then he takes evidence on what does it mean in the business and so on. He has what, a four-day trial? Yes, sir. Your Honor, if I may, I want to jump to that. Go ahead. The definition the court applied doesn't make sense to me. The court says that order solicited means, quote, getting a specific request for the purchase of products. That's at the record 4,264. Why doesn't that make sense? I mean, the example that I would give you is what I would think happens in business all the time, is the buyer says, okay, your price is 85, but I'm going to buy a whole bunch, so I want 83. And the agent says, well, I don't know if they'll accept it or not, but let's write up an order. Now, if you've done that, the buyer has an order, and maybe they'll accept it, maybe they won't. Here they've negotiated, but they haven't finalized it in any way. I mean, you would agree that everything they did up to this time was not binding on Walmart in any way. Walmart could have walked away from their discussions. Walmart can always walk away. Well, if you make an offer. I mean, in my example, you have placed an order, and if they accept it, it's a contract. But it's up to the other side whether to accept it or not. Well, yes, Your Honor. But, I mean, to get to that's the consequence of soliciting. To get to the point where an order is requested, soliciting has to precede it. You don't, the request follows soliciting. In the second part, if I may make it. But that's where the district court said, well, in common terms it would be, but then he takes the evidence and says that's not the way it operates in this industry. Yes, sir. And if I may get to the evidence, the second point. He says, and this is on 4263, all four steps must have been completed before it can be said that an order was solicited. That's a quote. Your Honor, the reason he knocks us out on this is that he says the item, the item number hadn't been created. Your Honor, the item number was an administrative task. It was created July 27th. Then they got 3,100 orders July 31st. So you only have a four-day gap. You've already negotiated the price per unit. You've already negotiated the containers. You've already negotiated how many stores are getting it. July 2nd email said we're getting 3,100 stores. You've already created all the containers. That happened May 25th. I don't know what magical event or statement could have occurred in those four days to constitute soliciting. Soliciting necessarily had to have occurred for that order to have been made on July 31st. The administrative task of assigning an item number, which had actually already been done. There was an item number assigned in April 2008 as well. It just does not constitute soliciting. There leaves no gap for where soliciting is. The item number issuance and transmittal, that's where Walmart commits itself as opposed to just negotiating, isn't that? Walmart never commits itself. They do. They're bound by their contracts and their offers. The contracts say they can terminate whenever they want. They can terminate something that's already happened. You seem to be saying Walmart isn't subject to contract law, and that can't be right. The way their contracts are set up is that they allow them to terminate it. Actually, I guess the defendant drafted the contract. Yes, Your Honor. If there's any ambiguity, it would be construed against the drafter. Yes, Your Honor. You do have that going for you. In the face of that, the district court embraces this concept that an ordinarily understandable phrase such as order solicited means something different and special because of the testimony of an expert witness, even though there are experts on both sides saying two different things. I guess the issue is why would the court entertain expert testimony on an issue like this in the first place? I don't know, Your Honor. The definition applied by the district court flew in the face of the lay witnesses. Brent Keeley, the signatory for work, said that normal ordinary uses applied. My client, who signed, said that normal ordinary uses applied. Even the president of works, when he tried to define solicited, he said it's an ordinary Webster's dictionary. I said, well, does it require it? I was thinking part of the answer to Judge Clay's question, I don't know that it tells you the conclusion, but in terms of experts, isn't the Walmart bidding process unusual? It is unusual, but not with regard to solicited. There is no unique industry definition for solicited. Under your definition, though, would it have mattered? You emphasized the four days, but would it have mattered if it had been six months or three years, if Walmart had said, you know, we love your stuff, we're just not ready to place any orders, and five years later they say, okay, now we like your stuff, here's the order. If I may, Your Honor. Well, that becomes a very interesting facts question, because you have almost like a proximate cause question as to whether the order solicited actually resulted in the orders that were obtained. And in that case, there would be an interesting question. I think we would have a difficult issue if we had to say five years later Walmart made the order. But even though, in my hypothetical at least, the price, all the terms had sort of been set, but they just said, you know, we don't need any right now, we haven't placed an order. Okay. Will you have some time for rebuttal? We'll hear from your colleague. May it please the Court. Asaki Batches for the Works Defendants. I think the Court makes several good points on the term M.A.N.A., Code of Ethics. It is a box after the signature line. And the district court found on its face it doesn't apply. Not that it's ambiguous or that it lends some ambiguity to the contract, but on its face it doesn't apply. We're reviewing that decision de novo. And if we find that the district court's decision in that regard was all wet, the fact that that's what the district court decided wouldn't matter. So, I mean, if there's a reason why you think the district court's decision in that regard was correct, that would be more important than just the assertion that that's what the district court decided. Well, on its face it's correct. It's not ambiguous because, one, for three reasons. One, it's a box after the signature line. The manufacturer is not even defined in that box. The terms are not similar to the terms in the contract. That box, the font, the typeset is different in that box than it is in the rest of the contract. The second reason is there's no contractual language in that box. I think the Court said it's artful, and it is. The contract has actual language in it that governs the parties. The Manicote of Ethics says, oh, make your contract say X, or make your contract say this. That's not the same as actually making the contract say something. And then the third reason is that there's no incorporation of these after subsection phrases into the contract. All of the cases cited by the plaintiff have been some way incorporated. They use incorporating language. Here we don't have any incorporating language into the contract. So the Manicote of Ethics on its face can't apply. I think the second issue, the order solicited issue. Let me ask you a question about that. As I understand in the record below, we had Mr. Brent Keeley, who is identified as the Vice President for Works, testifying that that phrase, order solicited, is what everyone thinks the ordinary and apparent meaning of the phrase would be. Then you've got John Garrison, the CEO of Maverick, testifying as to the same thing. So if we've got the plaintiff testifying and the defendant, their authorized officers both testifying as to the same thing, why doesn't that dispose of the issue? What would be as to what that phrase means in the contract between the two parties? Why would the district court, in some apparent confusion, be going to get expert witnesses and all that? Then, based upon the testimony, created a five-step process for deciding whether something was an order solicited. That five-step process is not in the contract anywhere. What would you say about all that? Well, Your Honor, that's very interesting, and that's what we have here. That's the issue that was presented, soliciting. But the issue in this case is not soliciting. What Mr. Keeley testified to, what Mr. Garrison testified to, what was asked throughout the trial by the plaintiff was, what does the term solicited mean to you? That's not what we have here, and that's not what the court said was ambiguous. Order solicited. Maybe I'm misunderstanding. I thought that what the district court did was to conduct a trial on the issue of what that phrase meant. Exactly, Your Honor. So basically, instead of having a trial delving into whether the Maverick Marketing Group had performed under the contract, the district court conducted a trial on what that phrase means. The district court's trial was on order solicited, not on solicited. That's just a word in the term. You can't separate the two. Throughout the contract, the word order solicited is together. It's not just solicited. Maverick is not being compensated for soliciting a relationship, for soliciting a company. It's being compensated for orders only. And so when you ask, what does the term solicited mean, that's not an issue here. We understand what the term solicited means. What was unclear and what the trial court determined was the term order solicited. All throughout the summary judgment motion, it says order solicited in bold letters on page 2. One more question. If that phrase was so critical to the contract, don't you think it would have been defined in the contract? Well, Your Honor. Because it's not defined. The contract doesn't address that phrase or define it. The contract does not define order solicited. And it defines what the marketing group is actually allowed to do. And that's solicit orders. But for the fact that it's not defined what makes it ambiguous. That is correct. If it had been defined, we probably wouldn't be here or the judge wouldn't have done a trial. He'd have done something else. That's correct, Your Honor. So it says order solicited. I mean, what about the distinction? We know there's something about acceptance. So we know there's the possibility of orders accepted. What would you say the difference between those is? Orders accepted and orders solicited. Just the time it takes for the mail. It's probably an e-mail these days. So it's just the time it takes for the e-mail to get to works and say agreed. I think that is correct. That's the distinction. The distinction is the company works at all times has the opportunity to not accept the order. And so the reason why the law... The only protection of this provision, it relates to this point of they may say, oh, we're not going to accept. They can. And that's what this protects you from. Well, it protects you from works saying we're not going to accept or from works accepting the order 30 days later. That's what this provision protects you from. So that Wal-Mart decides not to, in fact, place what the discussions have talked about. In other words... Well, if there's no order placed, then you never get a commission. There's no commission to talk about. If there's no order, there's nothing to talk about. And that's why we're talking... But orders placed, why shouldn't there be a distinction between orders solicited, orders placed, and orders accepted? The one we're jumping over is orders placed. And it looks like the district court judge is saying orders solicited and orders placed are the same. Because that's how I read the five-step process. Isn't the last step placing the order? An order is a definite thing. You have to place it. You have to... You would agree solicited... The definition of solicited orders under the district court's decision encompasses orders placed. You have to have an order, an actual physical order, in order to get a commission. So I agree that there has to be an order in existence. The acceptance and received and those issues, they come squarely under the contract, which says regardless of the time the order is accepted. But you have to actually have an order to accept it. And so that's what this contract provides. Counsel, let me ask you one thing. We talked about Mr. Keeley. Is that his name, Keeley? Correct, Your Honor. Had been at works. But am I right that when he signs the affidavit, he's been gone for like seven and a half years? Correct, Your Honor. He left shortly after the first year the contract was signed. And actually the term... I thought he had left in 07 and the termination... The whole fuss here was it wasn't until 09. So the definition of at least what they were thinking about, the gravamen happened in 09 and Keeley's gone and he's now, I guess, out in... He's in Canada, I guess, according to... Correct, Your Honor. And that... Notarization. That brings us to the laches determination. Here we have death of witnesses. We have the attorney who drafted the contract dead. We have the vice president of marketing at the time dead. The laches, what the judge did about laches seems to be legally incorrect in that you don't usually go to laches if you've got a statute of limitations. And the case was still within the statute of limitations. Not only that, the laches decision would normally be made in advance of the trial to prevent the expenditure of resources and money and such to try a case. I mean, why isn't the laches determination just erroneous as a matter of law? Your Honor, under Tennessee law, gross laches can be applied after the statute of limitations. The court found gross laches in this case. Here, the difference between laches and gross laches is laches is an inexcusable delay and gross laches is an inexcusable delay, plus these three things, death of a witness, loss of evidence, or failure of memory that results in an impossibility for the court to here decide or decree with confidence. And under Tennessee law, you're saying that that would supersede the statute of limitations? Yes, Your Honor. If there is a statute of limitations under Tennessee law, gross laches applies. Okay, but the laches is just another string to the bow. That is, you don't need that in order to win if you win on the other points. I think, Your Honor, that in the trial, cumulatively, yes, that laches is another reason why we succeed in this case. Okay, but it's only another reason. It's not necessary. That's the point I'm making. Correct, Your Honor. So, you know, a way to look at this case that cuts in both directions is this. Your client's position is pretty sharp-elbowed. This is pretty tough on them. They did all this work, and the last second, they get nothing. What supports that position, you might argue, is that Walmart has this really elaborate bidding process. And so the five steps may not make sense to too many other industries or other wholesalers, retailers, but this one, it does. But it does seem pretty unfair at the front end, right, because it takes so much time to finally get this first order in. Is there anything at the back end which softens that? In other words, let's say this had worked out the other way and that they had actually gotten the agreement, gotten the orders going, and they'd had two years of work. Okay, so Maverick's getting commissions for two years, and then you terminate. Okay? Is there anything about the Walmart process that's helpful to someone like Maverick at the back end? Does that make sense, the question I'm asking? Yes, Your Honor, and I think it's not necessarily the Walmart process that's helpful to Maverick in the back end, but it's the contract that's helpful to Maverick. Go ahead. Explain why that's so. Because the contract provides, if we terminate, you still get 120 days of commissions afterwards. So he still has 120 days after we terminate in which to receive commissions. It's not just the, okay, we're terminating today, and that cuts off your commissions on the day we terminate. I think Judge Sutton's question is Walmart's process arguably makes the order a kind of an infinite forward stream, so that if in those 120 days there's more money, there's more money, there's more money, those would all be orders that he solicited within the time period. Correct, Your Honor. Including a six-month order that goes, completion of it goes well beyond the 120. Well, the way that both experts testified to Walmart's ordering process is this replenishment process. And so it would be incumbent on the agent to monitor their replenishment and monitor how much each store or these however many stores and what they need. And so it would be incumbent upon the agent to make sure that these orders come in to replenish the product. I think that arguably at least if it becomes a real order, then the magnitude of the order doesn't matter. Correct, Your Honor. Okay. What else have you got to tell us? Well, Your Honor, in some, but all three issues, so the first issue is DeNovo, but we believe that we prevail on the Manicode of Ethics because it just doesn't apply on its face. And even if it applies on its face, if you apply the intent of the parties, the conflicting terms, it just does, it should not apply to this case. Order solicited, we believe we win on that point, Your Honor, also, because the definition of order solicited is an issue and not just solicited, which is what the plaintiffs argue. And the court heard evidence on order solicited, and the court applied the facts to the term order solicited. And that should be given a presumption of correctness. And then finally, on the laches issue, Your Honor, we should win because we do have laches plus the death of a witness, the loss of evidence, and failure of memory. Thank you, Your Honor. Thank you, counsel. You have your three minutes for rebuttal. May it please the Court. I didn't get the chance to discuss laches. There was a case I found after the briefs had been filed. When I was looking for gross laches, I was trying to find the definition of gross. There doesn't seem to be anything in addition in the Tennessee cases that defines gross. The basic definition of gross is flagrant and extreme, but the Sixth Circuit actually has some cases defining gross laches. If you look at the case, it's Patton v. Bearden. It's 8F3rd 343-348. It says there's a strong presumption against applying gross laches prior to the statute of limitations, absent a, quote, compelling reason. So I would just submit that as the standard that should be applied. As far as gross laches. It's a classic quotation that gross is simply a vituperative epithet attached to something else. Yes, sir. It's gross. Your Honor, I think with gross laches, there's an inconsistency in the Court's ruling because it made at least six determinations regarding the contract at the summary judgment phase. Determined the material terms of the agreement, the termination date, the effectiveness of the termination. They ruled that there was no fraud, that the affirmative defenses and counterclaims of fraud had no basis with regard to the contract. They found that the sub-signature provisions didn't apply. And they also found that defendants breach of contract counterclaim didn't apply. And then at the trial phase, they got to the order solicited provision. So they were able to interpret that. That contradicts the requirement that there be an uncertainty to ascertain the truth or enter a decree with confidence. I don't know how you can make all those rulings and say, well, I can't issue a decree. Those are seven rulings that he was able to rule based upon the evidence provided. There are also some factual issues. He said that, quote, a signed copy of the agreement could not be found. I have an original back in my office. A copy of the original is in the record at docket entry 61-1. That's pages 1,475 to 78. And it's also an uncontested issue in our pretrial order that there was an agreement signed February 12, 2007. He talks about Wes Fowler being unavailable. Wes Fowler is a lawyer in Memphis. He has nothing to do with this lawsuit. The only connection Wes Fowler has to this lawsuit, Your Honors, is that he and I had a trademark case pending before Judge Anderson at the same time that was dismissed because of settlement November 3, eight days before. That case is Expedition Unknown LLC versus the Travel Channel. It's case number 15-CV-2437. They also said Keely and McInnis were unable, they were difficult to locate. We found them. We went and took their depositions. That doesn't make any sense. He also talks about the Territory Management Agreement. Defendants put no evidence in regarding how the Territory Management Agreement could impact the contract, and they made no argument regarding it in their conclusion, in their post-trial brief. Also, Walmart is unique in that the fact is you cannot solicit unique orders. You have to solicit the program. If you look at the emails, that's what John Gerson was trying to do. Actually, Walmart has a rule that prevents you from soliciting orders, and Mr. Burroughs' testimony lacks any basis because he was a retail side. So does that mean that at least when they signed this contract, they didn't know about Walmart and vice versa or directly, but are you saying that once they began to solicit the program, then everything after that was an order they solicited? Yes, sir. When you're doing a supplier side, there is a big difference between the supplier side and the retail side. Mr. Burroughs completely omitted from his analysis the fact that there is a test, a separate test. There are two tests. There's the WORCS test, W-E-R-C-S, different from W-O-R-X, W-E-R-C-S. It tests what the chemicals are. There's a second test where my client did a three-store test and a 24-store test, and the reason he did that is that when you're doing the supply side, Walmart figures on the front end whether they're going to use you in perpetuity. But I thought Maverick was an expert in Walmart, getting Walmart business. Yes, sir, they are. So, I mean, that cuts against you. I mean, your client should have realized how this whole process works and therefore could have put in the contract when it comes to solicited orders, here's how it goes. He's an expert for Walmart. He is definitely not a lawyer, Your Honor. He is far from a legal lawyer. No, no, no, but I'm just making the point. He understood the process. I mean, if you're going to use paragraph six to protect you, he was in the best position to know how to protect himself. Yes, Your Honor, and as a layperson, he actually discussed that issue with Brent Keeley, and Brent Keeley said you're protected under paragraph six. Ah, maybe you have an out at this point. Yes, that's in the record. Malpractice action. Brent Keeley? That was the vice president for the— Oh, well, no, whoever the lawyer was. Oh, it was the in-house lawyer. No, that was the vice president for works, who signed for works. Ah, I got it, I got it. Okay, thank you. Thank you, Your Honor. But just, no, I do want to make one. Did he have a lawyer? Did Maverick use a lawyer? No lawyer. All right, well, okay, we do have a malpractice action. It's just self-inflicted. Yes, sir. Thank you very much for your interest, Your Honors. That case will be submitted, and the clerk may call the next case.